IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BARBIE ROBINSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:25-cv-4925 |
| v. | § | |
| | § | |
| HARRIS COUNTY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S FIRST AMENDED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**

I. INTRODUCTION

Defendant Harris County, Texas ("Harris County"), pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully files this First Amended Motion to Dismiss Plaintiff's First Amended Complaint filed January 15, 2026.

Plaintiff asserts claims for race discrimination, retaliation, and violations of the Family and Medical Leave Act arising from the termination of her at-will employment as Executive Director of Harris County Public Health. Although the Amended Complaint contains extensive narrative characterization, it does not plead sufficient nonconclusory facts to state a plausible claim for relief under governing law. When the Court applies the pleading standards set forth in *Twombly* and *Iqbal*, and considers other materials properly before it—including the termination letter central to Plaintiff's claims—the Amended Complaint fails to plead enough facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Despite being given the opportunity to amend, Plaintiff has not cured the deficiencies identified in Defendant's original Rule 12(b)(6) motion. Specifically, the First Amended

1

Complaint does not meaningfully alter the factual landscape. Instead, Plaintiff merely (1) adds additional names in paragraph 21, (2) inserts a public-relations quotation attributed to the County Judge in paragraph 29, and (3) sprinkles conclusory assertions and synonymous rewordings throughout the pleading. These cosmetic changes do not add nonconclusory factual content and do not move Plaintiff's claims from possible to plausible.

The added names in paragraph 21 do not supply facts showing discriminatory or retaliatory intent, nor do they allege any adverse employment action attributable to race. Likewise, the quoted statement attributed to the County Judge in paragraph 29 is a generalized public comment regarding alleged "political prosecutions" with a cautionary statement regarding the perception at slinging political arrows at "people of color," yet it misses the mark of plausibly suggesting unlawful motive. Such allegations are precisely the type of narrative gloss and inferential leap that Rule 12(b)(6) does not permit.

Apart from these additions, the amended pleading relies on the same conclusory characterizations previously asserted—relabeling disagreement as discrimination, timing as causation, and routine employment oversight as unlawful interference. Rephrasing conclusions and substituting synonyms for facts does not satisfy federal pleading standards.

Dismissal under Rule 12(b)(6) is warranted because Plaintiff still has not pleaded any factual content that would allow the court to draw a reasonable inference that Harris County's loss in confidence in Plaintiff was based on anything other than her performance as a public servant.

## II. PLAINTIFF'S SELECTIVE AND AMENDED ASSERTIONS

Plaintiff served as Executive Director of Harris County Public Health ("HCPH") from March 2021 until her termination on August 30, 2024.[1]

---

[1] *See* Plaintiff's First Amended Complaint; Civil Action No. 4:25-cv-4925; In the United States

The Plaintiff alleges that Harris County Commissioner Adrian Garcia advocated for public-health programs focused on Hispanic communities within his precinct and expressed disagreement with Plaintiff's program priorities.[2] Plaintiff characterizes this conduct as discriminatory but does not allege that it resulted in any change to her compensation, title, responsibilities, or benefits, nor does she identify any tangible employment consequence resulting from these alleged disagreements.[3]

Plaintiff alleges that she complained internally to her supervisor and later submitted a written complaint to Human Resources in June 2024 alleging race, gender, and age discrimination.[4] The Amended Complaint does not allege that Harris County imposed discipline, issued warnings, or took any adverse employment action against Plaintiff as a result of these complaints, merely that Plaintiff's employment was terminated thereafter.[5] In Plaintiff's amended pleading she states she was required to meet with Commissioner Garcia's chief of staff and names four other executive directors of county agencies who were not required to be at those meetings, yet that is all Plaintiff states.[6] She does not allege that she was the only county agency director to have such meetings. She simply states four others were not required to. Plaintiff alleges she included these four names in her complaint to HR and third-party firm investigating Plaintiff's claims, yet Plaintiff does not include the outcome of that investigation.[7]

In August 2024, Plaintiff alleges she requested leave under the Family and Medical Leave Act due to stress and anxiety.[8] Plaintiff further alleges that she received work-related emails and

---

District Court for the Southern District of Texas, Houston Division. ("Complaint") ¶ 11.
[2] *Id.* ¶¶ 17–21.
[3] *Id. passim.*
[4] *Id.* ¶¶ 2–24.
[5] *Id. passim.*
[6] *Id.* ¶ 21.
[7] *Id.* ¶ 24.
[8] *Id.* ¶ 26.

3

requests during her leave, but without contending that her leave was revoked, shortened, unpaid, or otherwise denied, or that she suffered any concrete harm as a result of such communications.[9]

Three days before Plaintiff's termination, the Houston Chronicle published an article investigating Plaintiff's link to a company awarded a $6 million public health contract with HCPH during Plaintiff's tenure as HCPH Director.[10] Plaintiff apparently gave the newspaper an extensive interview,[11] but failed to inform her supervisor that the press was investigating government wrongdoing or that she made comments about a county fiscal matter.[12] That same day, Commissioners Court took up an item directly related to the Chronicle article, however Plaintiff failed to appear or otherwise be available to answer to the county's governing body.[13]

On August 28, 2024, Plaintiff's supervisor, County Administrator Diana Ramirez raised these issues with Plaintiff.[14] Ramirez also had reason to believe Plaintiff was performing contract consulting work in California and so she asked Plaintiff about that too.[15] Ramirez could not corroborate what Plaintiff told her in response.[16]

Plaintiff was terminated on August 30, 2024, for reasons wholly unrelated to Plaintiff's race, internal complaints, or use of FMLA leave. The telling omissions from the facts Plaintiff chose to assert clearly show that County officials lost confidence in her ability to effectively service the people.[17] Plaintiff also alleges she was replaced by a Caucasian woman, but she provides no other information about her replacement to conclude that this decision was racially motivated.[18]

---

[9] *Id.* ¶¶ 25–26.
[10] *See* **Exhibit A** – August 30, 2024 Termination Letter, attached and incorporated herein by reference at 1.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *See* Complaint at ¶ 28.

4

Plaintiff adds in her Amended Complaint a screenshot of a PR statement made by County Judge Lina Hidalgo in which Hidalgo refers to Plaintiff's termination as part of a broader scheme of "political prosecutions" but makes no allegations that Plaintiff's termination violated any law or related to her race.[19]

## III. RULE 12(b)(6) STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of a complaint that fails to state a claim for which relief can be granted. A complaint must contain enough facts to state a claim for relief that is plausible on its face to survive a Rule 12(b)(6) challenge. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, the court takes all factual allegations contained in the complaint as true and resolves any ambiguities or doubts regarding sufficiency of the claim in favor of the plaintiff. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

To survive a motion to dismiss, a complaint must allege sufficient facts to state a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 662; *Twombly*, 550 U.S. at 555–56. While a plaintiff may provide a generalized statement of facts, there must be sufficient information to outline the elements of the claims. *See Matta v. May*, 888 F. Supp. 808, 813 (S.D. Tex. 1995) (citing *Ledesma v. Dillard Dep't Stores, Inc.*, 818 F. Supp. 983, 984 (1993)). If a complaint does not include facts supporting "pivotal elements" of the claim, the Court may assume the nonexistence of such facts. *Id.*

A court is generally limited to the allegations of the complaint and the documents either

---

[19] *Id.* at ¶ 29.

5

attached to or incorporated in the motion, but can take judicial notice of adjudicative facts. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996); Fed. R. Evid. 201(f). The complaint must contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Iqbal*, 556 U.S. at 662; *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Eli Lilly & Co. v. Revive Rx, LLC*, No. CV H-23-3521, 2025 WL 3640703, at *5 (S.D. Tex. Dec. 15, 2025); *see also* Fed. R. Civ. P. 8(a)(2). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, such basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court. *Id.* (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)).

Courts must disregard conclusory allegations and determine whether the remaining well-pleaded facts plausibly give rise to an entitlement to relief. *See Iqbal*, 556 U.S. at 679. The question is not whether the plaintiff may ultimately prevail, but whether the complaint crosses the line from possibility to plausibility. *See Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). Although detailed factual allegations are not required, a complaint may be dismissed when (1) it does not show a right to relief beyond mere speculation or (2) it states a claim for relief from which no more than a mere possibility of misconduct can be inferred *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### IV.   THE COURT MAY CONSIDER LIMITED EXTRINSIC MATERIAL

The termination letter is not extrinsic evidence and can be considered to support this motion to dismiss. Federal Rule of Civil Procedure 12(d) requires converting a 12(b)(6) motion to dismiss to summary judgment only when a court considers matters outside the pleadings. It does not apply to

6

documents central to the plaintiff's claims and referenced in the complaint, or documents whose authenticity is undisputed. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). The termination letter falls squarely under the exceptions.

The termination letter is not extrinsic because it is central to Plaintiff's claims, which turn on why she was terminated. The August 30, 2024, termination letter is the operative document explaining that decision and is therefore central to the claims asserted. Plaintiff herself quotes the letter in paragraph 31 of her Amended Complaint though she does not cite to it or attach it.

The letter explains that Harris County lost confidence in Plaintiff's judgment based on: Plaintiff's undisclosed participation in a Houston Chronicle investigation; the absence of Public Health Department leadership when Commissioners Court considered a related agenda item; unsatisfactory explanations when questioned; and undisclosed secondary employment with Yuba County, California.

The Fifth Circuit has expressly approved of allowing district courts' review of documents that a defendant attaches to a 12(b)(6) motion to dismiss if they are referred to in the plaintiff's complaint and are central to her claim. *Id.* "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 499.

The reasons for Plaintiff's termination articulated in the termination letter are directly relevant to the plausibility analysis under *Twombly* and *Iqbal* and may be considered without this motion's conversion to summary judgment.

V. **LEGAL ANALYSIS**

   A. **THE AMENDED COMPLAINT FAILS TO STATE A TITLE VII RACE DISCRIMINATION CLAIM**

Under Title VII, it is unlawful to discriminate against an employee on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–16; *see also Sotonwa v. Collins*, No.

24-11043, 2025 WL 2222730, at **4–5 (5th Cir. Aug. 5, 2025). Plaintiff's Amended Complaint is devoid of any facts of racial discrimination by her superior, and the facts she does include, even if taken as true, do not support a claim of discrimination under Title VII.

Title VII claims that depend on circumstantial evidence, as here, are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in which the employee must first establish a *prima facie* case of discrimination. *See Sotonwa* at *5 (citing *McDonnell*, 411 U.S. at 802). To establish a *prima facie* case, the employee must show that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees

outside the protected group. *Id*. If the employee establishes a *prima facie* case, the burden shifts to the defendant employer to produce evidence that the employee was rejected for a legitimate, nondiscriminatory reason. *Id*. If the employer can provide a legitimate nondiscriminatory explanation, the inference of discrimination drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for racial bias. *Id*.

Here, Plaintiff relies on generalized allegations without identifying any concrete, non-speculative facts demonstrating that similarly situated non-African-American employees were treated more favorably under nearly identical circumstances. Plaintiff's Amended Complaint fails to allege a single fact that Ramirez acted with race-based animus toward her.

Plaintiff alleges that other funding priorities and program decisions were placed above hers, that she was required to attend additional meetings, and her proposed initiatives received opposition. Even as amended, the Complaint does not allege facts showing that these policy disputes altered Plaintiff's compensation, title, or benefits, nor does it plausibly allege that such

disagreements—standing alone—constitute unlawful discrimination rather than routine political and budgetary disagreement.

Plaintiff's identification of other executive directors by name and race does not cure this defect. The amended pleading does not allege that these individuals were similarly situated in all material respects, subject to the same oversight authority, or involved in comparable public controversies. Naming alleged comparators without factual context does not transform conclusions into plausible claims.

Plaintiff also alleges that she was removed from oversight of certain programs in May 2024. The amended complaint does not plead facts showing that these decisions were final, permanent, or accompanied by a reduction in pay or rank, nor does it allege facts tying those decisions to racial animus rather than management or governance choices.

Plaintiff's conclusory allegations are insufficient. *See Iqbal*, 556 U.S. at 678; *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (". . . conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). Plaintiff has not provided actual evidence of pretext, and nor can she. She has merely stated that she was held to a different performance standard without proof. At most, her complaints amount only to Commissioner Garcia advocating for allocation of resources to his constituents and questioning her involvement in a government-issued contract.[20]

---

[20] Plaintiff's Amended Complaint fails to allege—much less plausibly establish—any causal connection between Commissioner Garcia's alleged discriminatory remark and Diana Ramirez's independent decision to terminate Plaintiff's employment. Nor can she because under Texas Law, a lone county commissioner is not vested with final policy authority; and in Harris County the County Administrator is vested with authority to hire and fire most Department Heads. *See* Tex. Const. Art. V, §18(b); s*ee also* Tex. Local Gov't Code § 81.006(a); s*ee also* Harris County Countywide Organizational Chart at p. 3 of Harris County Harris County FY 2026 Proposed Budget https://budget.harriscountytx.gov/doc/Budget/budgetbook/FY2026/FY26_V2_Proposed_Budget_Volume_I_20250826.pdf.

These allegations, even if accepted as true, do not plausibly establish racial discrimination under Title VII. At most, Plaintiff alleges a disagreement over how public health resources should be allocated among different communities. Such disagreements—particularly when raised by an elected official acting on behalf of his district—are not evidence of racial animus and cannot be transformed into a Title VII claim through conclusory labeling. *See Iqbal*, 556 U.S. at 678

Despite expanded rhetoric and additional names, the First Amended Complaint still fails to plead facts that plausibly establish race discrimination under Title VII. Because Plaintiff has raised no facts of unlawful, discriminatory conduct, her Title VII discrimination claim warrants dismissal under Rule 12(b)(6).

### B. TITLE VII RETALIATION CLAIM IS INADEQUATELY PLEADED

Title VII precludes employers from retaliating against employees because they "opposed, complained of, or sought remedies for, unlawful workplace discrimination." *See Sotonwa* at *6–7 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013)); *see also* 42 U.S.C. §§ 2000e–3(a)). When a litigant aims to prove retaliation though circumstantial evidence, courts apply *McDonnell Douglas* and require the plaintiff to establish a *prima facie* case of retaliation. *Id*.

To establish a *prima facie* case of retaliation, an employee must show (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.* (citing *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020)). At the *prima facie* stage, a plaintiff can demonstrate a causal link by showing close temporal proximity between the protected activity and the adverse employment action. *Id*. If the plaintiff meets her burden of establishing a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id*. at *7 (citing *Shahrashoob v. Texas A&M Univ.*, 125

F.4th 641, 652–53 (5th Cir. 2025)). The employer's burden is one of production, not persuasion. *Id*. If the employer meets its burden, the plaintiff is tasked with showing that the employer's proffered reasons are a pretext for retaliation. *Id*.

Robinson has cited no facts that her termination was the result of retaliation. Moreover, the only available evidence shows she was terminated for legitimate, non-discriminatory reasons. Plaintiff's termination letter clearly spells out the reasons for her termination: she made comments to the press regarding an investigation into alleged bid-rigging; she failed to advise superiors and elected officials; and she failed to answer Commissioners Court questions during a public meeting, a core part of her job. All of these non-discriminatory actions led the County to lose confidence in her ability to lead a County department.

Plaintiff tries to tie her termination to a complaint she filed about Commissioner Garcia, but Plaintiff provides no facts beyond temporal proximity to support such a stretch of the imagination.[21] Plaintiff admits in her petition that Ramirez cited loss of confidence in Plaintiff's ability to lead as the reason for her termination.[22] Yet, Plaintiff's pleadings boil down to this: she filed a complaint in June, she took FMLA in August, she was fired in August so therefore she was fired because she took FMLA time.[23] That is the sum and total of Plaintiff's pleading to support her claim of FMLA retaliation. Temporal proximity alone, without additional factual allegations, is insufficient to establish causation.

The amended pleading does not allege new facts showing that the decisionmaker terminated Plaintiff because of her complaints. Instead, Plaintiff continues to rely primarily on

---

[21] Complaint, ¶¶ 20–21; *see* Tex. Const. Art. V, §18(b); Tex. Local Gov't Code § 81.006(a); Harris County Countywide Organizational Chart at 3 of Harris County Harris County FY 2026 Proposed Budget https://budget.harriscountytx.gov/doc/Budget/budgetbook/FY2026/FY26_V2_Proposed_Budget_Volume_I_20250826.pdf)
[22] *Id*. ¶ 21.
[23] *Id*. ¶¶ 19–21.

temporal proximity, asserting that she complained in June and was terminated in August. Temporal sequence alone, without factual allegations showing retaliatory motive, does not state a plausible claim.

Plaintiff further attempts to plead pretext by quoting a public statement attributed to County Judge Lina Hidalgo. The amended complaint does not allege that Judge Hidalgo made the termination decision, directed it, or possessed final authority over Plaintiff's employment. A post-termination public statement, untethered to the decision-making process, does not plausibly establish retaliatory intent.

The First Amended Complaint therefore continues to rely on conclusions, hindsight disagreement, and timing—none of which cure the original pleading deficiencies.

### C. THE AMENDED COMPLAINT DOES NOT ADEQUATELY PLEAD FMLA INTERFERENCE

To plead an interference claim, a plaintiff must at least show that the defendant interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her. *See Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)). An interference claim requires proof that the employer denied the employee her entitlements under the FMLA. *Id*. (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)). The FMLA does not prohibit an employer from all contact with an employee. *See Lopez v. Tex. Christian Univ.*, No. 4:22-CV-00171-O, 2022 WL 3227854, at *2 (N.D. Tex. Aug. 10, 2022) (citing *Smith-Schrenk v. Genon Energy Servs., L.L.C.*, No. 13-2902, 2015 WL 150727, at *9 (S.D. Tex. Jan. 12, 2015)). De minimis contact between an employer and employee on FMLA leave does not amount to interference. *Id.* (citing *Ray v. Compass Bank*, No. 3:06-cv-1153, 2007 WL 9711686, at *5 (N.D. Tex. May 24, 2007)).

Plaintiff has failed to plead any factual allegations that Harris County denied or interfered with her FMLA rights. She merely pleads that she received some emails during her period of intermittent leave and was requested to attend a County meeting, but nowhere does she claim she was forced to attend or face losing her job if she did not comply or respond. She does not even plead that she actually attended the requested workplace meeting, or that she worked at the expense of her family medical leave. De minimis allegations of receiving emails or meeting requests, without facts showing denial of leave or actual interference with benefits, do not plausibly state a claim. *Id*.

The amended pleading does not allege that Plaintiff was forced to attend these meetings, disciplined for declining, or suffered any concrete loss of FMLA benefits. Nor does Plaintiff allege that she actually worked during leave in a manner that denied her the leave to which she was entitled.

Recharacterizing communications as "non-minimal disruptions" does not plead facts showing interference or prejudice. Minimal, non-prejudicial contact during leave does not constitute actionable interference, regardless of the Plaintiff's attempt to characterize such contact as non-minimal. Plaintiff has wholly failed to state a claim for which relief can be granted.

**D. THE AMENDED COMPLAINT DOES NOT ALLEGE FACTS TO ESTABLISH FMLA RETALIATION**

Plaintiff's claim of FMLA retaliation fails as a matter of law. "To make a *prima facie* case [of retaliation under the FMLA], [Plaintiff] must establish three elements: (1) she engaged in FMLA-protected activity, (2) [her employer] discharged her, and (3) a causal link between the protected activity and the discharge." *See Cerda v. Olin Corp.*, No. 3:21-CV-00214, 2023 WL 3938872, at **6–7 (S.D. Tex. June 9, 2023), aff'd sub nom. *Cerda v. Blue Cube Operations, L.L.C.*, 95 F.4th 996 (5th Cir. 2024) (citing *Watkins v. Tregre*, 997 F.3d 275, 284 (5th Cir. 2021)).

FMLA discrimination and retaliation claims follow the burden-shifting framework of *McDonnell Douglas*, *supra*. *Id.* at *6. Under that framework, the plaintiff must first establish her *prima facie* case of retaliation; then the burden shifts to the employer to proffer a legitimate, nonretaliatory reason for its adverse employment action. If the employer proffers such a reason, the presumption of retaliation disappears, and the plaintiff must then produce substantial evidence indicating that the proffered reason is a pretext for retaliation. "The plaintiff must put forward evidence rebutting each of the nonretaliatory reasons the employer articulates." *Id.* (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

The First Amended Complaint does not plead facts showing that Plaintiff's use of FMLA leave was the but-for cause of her termination. Instead, Plaintiff again relies on timing and conclusory assertions that the County's stated reasons were pretextual. The amended complaint does not allege facts rebutting the independent reasons articulated for termination or plausibly show retaliatory motive.

Plaintiff alleges no facts establishing any pretext either through evidence of disparate treatment or by showing that Harris County's proffered explanation for termination is false or unworthy of credence. The termination letter clearly sets out independent, non-leave-related reasons. Plaintiff offers no facts to plausibly rebut them.[24]

## VI. CONCLUSION

Courts resolve disputes according to law and evidence, not on passion, posturing, or volume. This Amended Complaint pleads conclusions, not facts; disagreement, not discrimination; timing, not causation.

The Court's December 29, 2025 Order permitted Plaintiff to amend her complaint to

---

[24] *See* Exhibit A – Termination Letter, *passim.*

14

address the deficiencies raised in Defendant's Rule 12(b)(6) motion. Plaintiff's First Amended Complaint does not do so.

Because Plaintiff has already been afforded an opportunity to amend and has failed to cure the deficiencies identified by the Court, dismissal with prejudice under Rule 12(b)(6) is warranted.

For the reasons set forth above, Defendant Harris County respectfully requests that the Court dismiss the Amended Complaint with prejudice, or in the alternative, grant summary judgment. Harris County requests all further relief to which it may be entitled.

**RUSTY HARDIN & ASSOCIATES, LLP**

*/s/ Russell Hardin, Jr.*
Russell Hardin, Jr. (SBT 08972800)
Federal Bar No. 19424
Emily Smith (SBT 24083876)
Federal Bar No. 1890677
Lisa M. Teachey (SBT 24056416)
Federal Bar No. 860543
5 Houston Center
1401 McKinney, Suite 2250
Houston, Texas 77010
Telephone: (713) 652-9000
Facsimile: (713) 652-9800
Email: rhardin@rustyhardin.com
Email: esmith@rustyhardin.com
Email: lteachey@rustyhardin.com

*Co-Counsel for Harris County, Texas*

### CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of January 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties.

*/s/Lisa M. Teachey*
Lisa M. Teachey